

# United States Court of Appeals for the Fifth Circuit

**Certified as a true copy and issued as the mandate on May 30, 2025**

Attest: *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

No. 24-50075

United States Court of Appeals
Fifth Circuit
**FILED**
May 8, 2025
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

versus

BILLY JOE RUSSELL,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:22-CR-286-1

_____

Before SMITH, CLEMENT, and HO, *Circuit Judges*.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion

No. 24-50075

for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

No. 24-50075

for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

Case: 24-50075    Document: 117-1    Page: 2    Date Filed: 05/30/2025

Case: 7:22-cr-00286   Document: 83   Filed: 05/30/25   Page: 3 of 13

# United States Court of Appeals
## for the Fifth Circuit

───────────

No. 24-50075

───────────

United States of America,

*Plaintiff—Appellee,*

versus

Billy Joe Russell,

*Defendant—Appellant.*

United States Court of Appeals
Fifth Circuit
**FILED**
May 8, 2025
Lyle W. Cayce
Clerk

───────────────────────────────

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:22-CR-286-1

───────────────────────────────

Before Smith, Clement, and Duncan, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

    Billy Russell pleaded guilty of being a felon in possession in violation of 18 U.S.C. § 922(g)(1). Because Russell was previously convicted of two violent felonies—he committed aggravated assault in 2014 and 2017—the district court, applying U.S.S.G. § 2K2.1(a)(1), sentenced Russell to 115 months' imprisonment. We affirm.

I.

    In 2022, the Midland Police Department responded to a domestic disturbance that involved Russell and his girlfriend. They were in their car

No. 24-50075

when the police arrived. The police ordered Russell to exit the vehicle; he then informed the police that there was a handgun in the car, though he denied ownership of it. He later admitted that he had possessed the firearm. He consequently pleaded guilty to being a felon in possession.

Russell's presentence investigation report ("PSR") calculated his base offense level to be 26 because he had been convicted of two felony crimes of violence ("COV") and had possessed a firearm capable of accepting a large-capacity magazine.[1] Russell's 2014 Tennessee aggravated-assault indictment alleged that he "knowingly cause[d an officer] to reasonably fear imminent bodily injury by the use of a deadly weapon," and his 2017 Tennessee aggravated-assault indictment alleged that he had "knowingly cause[d] bodily injury to [an officer]."[2] The district court also applied a three-point reduction for accepting responsibility, leaving Russell with a net offense level of 23. His guidelines range, with a criminal history category of VI, was 92 to 115 months' imprisonment. The district court accordingly sentenced Russell to 115 months of imprisonment followed by three years of supervised release. He did not object to the PSR or his sentence.

II.

On appeal, Russell's sole challenge to his sentence is that the district court plainly erred when it categorized his 2017 Tennessee aggravated-assault conviction as a COV.[3] Because he did not object to the categorization

---

[1] United States Sentencing Guideline § 2K2.1(a)(1) provides a base level offense of 26 if the offense involves "a semiautomatic firearm capable of accepting a large capacity magazine" and the defendant has at least two previous felony convictions of either a COV or a controlled substance offense.

[2] Both offenses were in violation of TENN. CODE ANN. § 39-13-102(a)(1)(A).

[3] Russell also challenges his § 922(g)(1) conviction as facially unconstitutional under *New York Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and because it exceeds Congress' power under the Commerce Clause. His challenges, however, are foreclosed. *See*

of his 2017 conviction as a COV, we review for plain error. *United States v. Reyes-Ochoa*, 861 F.3d 582, 585 (5th Cir. 2017). To prevail on plain error, Russell must show a clear or obvious error that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes that showing, we have the discretion to correct that error, but only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Russell has not shown a clear or obvious error.[4] Before addressing Russell's arguments, we will (A) define what a guidelines COV is and then (B) outline the categorical-approach framework.

A.

A guidelines COV is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element that the use, attempted use, or threatened use of physical force against the person of another," or (2) is one of several enumerated offenses, including "aggravated assault." U.S.S.G. § 4B1.2(a). Subsection 1 is known as the "force clause," and subsection 2 is known as the "enumerated offense clause." *United States v. Garner*, 28 F.4th 678, 681 (5th Cir. 2022) (per curiam). Both require some element of physical injury.

In the force clause, for example, "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).[5] As for the

---

*United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024), *petition for cert. filed*, (Feb. 18, 2025) (No. 24-6625) (holding that § 922(g)(1) is facially constitutional); *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) (holding that §922(g)(1) is a valid exercise of Congress's authority under the Commerce Clause).

[4] Because Russell fails to demonstrate clear error, we do not address the remaining prongs of plain error review.

[5] In *Johnson*, the Supreme Court defined "physical force" in the Armed Career Criminal Act. *Johnson* 449 U.S. at 140. Though we are interpreting § 4B1.2(a)(1), we have applied

3

enumerated offense clause, because the guidelines "do not define the enumerated crimes," including aggravated assault, "this court adopts a 'common sense approach,' defining each crime by its 'generic, contemporary meaning.'"[6] The Model Penal Code ("MPC") is our "primary source for the [offense's] ordinary meaning."[7]

The MPC defines aggravated assault, in relevant part, to include purposely or knowingly "caus[ing] serious bodily injury to another." MODEL PENAL CODE § 211.1(2)(a). The MPC further defines "bodily injury" to mean "physical pain, illness or any impairment of physical condition" and "serious bodily injury" to mean, in relevant part, "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member. . . ." *Id.* § 210.0(2)–(3). In sum, the enumerated offense of aggravated assault prohibits purposely or knowingly causing physical pain that creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member.

B.

If the elements of a state-law offense encompass conduct beyond the force clause or the generic enumerated offense, then it is not a COV. *See Mathis v. United States*, 579 U.S. 500, 509 (2016). To make that determination, we apply "what is known as the categorical approach." *Id.* at 504. But

---

*Johnson*'s definition to § 4B1.2(a)(1), coincidentally in a case that shares the same name. *United States v. Johnson*, 880 F.3d 226, 234 (5th Cir. 2018).

[6] *United States v. Martinez-Flores*, 720 F.3d 293, 295–96 (5th Cir. 2023) (per curiam) (quoting *United States v. Sanchez–Ruedas,* 452 F.3d 409, 412 (5th Cir. 2006)).

[7] *United States v. Torres-Jaime*, 821 F.3d 577, 582 (5th Cir. 2016) (quoting *United States v. Hernandez–Rodriguez,* 788 F.3d 193, 197 (5th Cir. 2015)).

where, as here, the statute is divisible, courts apply the modified categorical approach. *United States v. Lerma*, 877 F.3d 628, 631 (5th Cir. 2017).[8]

"Under [the modified categorical] approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 579 U.S. at 505–06 (citations omitted). "The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.* at 506. But, where it is impossible to determine from the record which version of a divisible statute a person was convicted of, we revert to the categorical approach and "consider whether the 'least culpable means' of violating the statute of conviction qualifies as a [COV]."[9]

We next turn to Russell's conviction records. His 2017 indictment alleged only that he had "knowingly cause[d] bodily injury to [an officer]." Neither the PSR nor any other sentencing documents provide additional information regarding his 2017 conviction. Because the conviction records do not specify what type of aggravated assault he committed, we apply the categorial approach and focus on the least culpable conduct in the statute.[10]

III.

In applying the categorical approach, we first must determine the elements of Russell's 2017 offense. *Lerma*, 877 F.3d at 631. The "elements

---

[8] "A divisible statute lists elements in the alternative, and thereby defines multiple crimes." *Id.* (cleaned up). Tennessee's aggravated-assault statute defines four separate crimes, each of which can be committed three different ways, so it is divisible. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A).

[9] *United States v. Sanchez-Rodriguez*, 830 F.3d 168, 173 (5th Cir. 2016) (citation omitted).

[10] *See id.*

are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Id.* (cleaned up) (quoting *Mathis*, 597 U.S. at 504). The elements are typically found in the criminal statute.

The Tennessee aggravated-assault statute reads, in relevant part,

> (a)(1) A person commits aggravated assault who:
>
> (A) Intentionally or knowingly commits an assault as defined in § 39-13-101, and the assault:
>
> (i) Results in serious bodily injury to another;
>
> (ii) Results in the death of another;
>
> (iii) Involved the use or display of a deadly weapon; or
>
> (iv) [I]nvolved strangulation or attempted strangulation . . .

TENN. CODE ANN. § 39-13-102(a)(1)(A).

That statute incorporates by reference the Tennessee simple-assault statute that, in 2017, read,

> (a) A person commits assault who:
>
> (1) Intentionally, knowingly, or recklessly causes bodily injury to another;
>
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
>
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

TENN. CODE ANN. § 39-13-101(a).

No. 24-50075

Russell provides a helpful visual:[11]

| Tennessee Aggravated Assault Table | | |
|---|---|---|
| | Divisible | Indivisible |
| Crime 1 | Assault resulting in serious bodily injury | 1(a) Causing bodily injury resulting in serious bodily injury |
| | | 1(b) Causing fear of imminent injury resulting in serious bodily injury |
| | | 1(c) Causing offensive physical contact resulting in serious bodily injury |
| Crime 2 | Assault resulting in death | 2(a) Causing bodily injury resulting in death |
| | | 2(b) Causing fear of imminent injury resulting in death |
| | | 3(c) Causing offensive physical contact resulting in death |
| Crime 3 | Assault involving a deadly weapon | 3(a) Causing bodily injury involving a deadly weapon |
| | | 3(b) Causing fear of imminent injury involving a deadly weapon |
| | | 3(c) Causing offensive physical contact involving a deadly weapon |
| Crime 4 | Assault involving strangulation | 4(a) Causing bodily injury involving strangulation |
| | | 4(b) Causing fear of imminent injury involving strangulation |
| | | 4(c) Causing offensive physical contact involving strangulation |

Russell contends, and the government does not dispute, that Crime 1(a)—assault causing bodily injury resulting in serious bodily injury—is the least culpable conduct.[12] And, according to Russell, Crime 1(a) can be

---

[11] We adopt Russell's taxonomy of offenses. For example, causing bodily injury resulting in serious bodily injury is Crime 1(a), while the crime of causing bodily injury involving a deadly weapon is Crime 3(a).

[12] Russell admits that Crime 3(a), *i.e.*, aggravated assault by intentionally or knowingly causing serious bodily injury involving a deadly weapon, is a COV. *See United States v. Mungia-Portillo*, 484 F.3d 813, 815 (5th Cir. 2007). That is also why the government's citations to cases holding that Crime 3(a) is a crime of violence are inapplicable. *See United States v. Ogle*, 82 F.4th 272, 277 (4th Cir. 2023) (holding that conviction of Tennessee aggravated assault with "the use of a deadly weapon" is a COV); *Braden v. United States*, 817 F.3d 926, 933 (6th Cir. 2016) ("Mr. Braden necessarily pled guilty to . . . intentionally or knowingly committing an assault while using or displaying a deadly weapon.") (cleaned up); *Hollom v. United States*,

7

committed by causing solely mental harm.

For support, Russell points to Tennessee's aggravated assault statute. The statute defines "bodily injury" as "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness, *or impairment of the function of a . . . mental faculty*." TENN. CODE ANN. § 39-11-106(a)(2) (emphasis added). And it defines "serious bodily injury" as "bodily injury that involves . . . (E) *Protracted loss or substantial impairment of a function of a . . . mental faculty*." *Id.* § 39-11-106(a)(34) (emphasis added). Read together, the Tennessee aggravated-assault statute criminalizes conduct that "impair[s] [] the function of a mental faculty" and which results in the "protracted loss or substantial impairment of a function of a mental faculty." That means, according to Russell, that Tennessee aggravated assault can be committed without causing any physical injury.

Because the guidelines' force and elements clauses require some kind of physical injury, Russell concludes that Tennessee aggravated assault cannot be a guidelines COV. The district court therefore erred, according to Russell, when it categorized his 2017 Tennessee aggravated-assault conviction as a COV.

Resourceful, but incorrect.

"[T]he comparison of generic federal statutes to allegedly nongeneric state counterparts is not an invitation to apply 'legal imagination to a state statute's language.'"[13] Russell "cannot simply rest on plausible interpreta-

---

736 F. App'x 96, 101 (6th Cir. 2018) ("[E]xtremely offensive or provocative touching, coupled with the use or display of a deadly weapon, includes an implied threat of force sufficient to constitute a crime of violence under the Sentencing Guidelines."); *United States v. Perez-Silvan*, 861 F.3d 935, 943 (9th Cir. 2017) (defendant charged with "unlawfully and intentionally or knowingly caus[ing] bodily injury to [another], by use of a deadly weapon").

[13] *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc) (quot-

tions of statutory text made in a vacuum." *Id.* He must identify an actual case in which it has been interpreted that way. *See id.* at 223. "At a minimum, [he] must point to cases in which a state has applied the statute in a broader manner," showing that there is a "realistic probability," instead of a "theoretical possibility" that Tennessee applies its statute to conduct falling "outside the generic definition of the crime." *See United States v. Montgomery*, 974 F.3d 587, 592 (5th Cir. 2020) (quoting *United States v. Albornoz*, 770 F.3d 1139, 1141 (5th Cir. 2014) (per curiam)). That he has not done.

Russell cites several state-court cases that, he suggests, confirm his creative interpretation of the statute. They do not.

In *State v. McClellan*, for example, a defendant was convicted of sexually assaulting his daughter. 2012 WL 2356487, at *1 (Tenn. Crim. App. June 21, 2012). The defendant maintained that he was entitled to a mitigating factor because his "conduct neither caused nor threated *serious bodily injury*." *Id.* at *6 (quoting TENN. CODE ANN. § 40-35-113(1) (1994)) (emphasis added).[14] Relevant here, the Tennessee court, applying a long line of Tennessee caselaw, reaffirmed that "[e]very rape . . . is *physically and mentally injurious* to the victim." *Id.* at *6 (quoting *State v. Kissinger*, 922 S.W.2d 482, 486 (Tenn. 1996)) (emphasis added). The court accordingly denied mitigation because the physical and mental injuries from rape qualified as a serious bodily injury.

Russell avers that *McClellan* held that *only* mental injuries qualified as a serious bodily injury. But that contention runs roughshod over *McClellan*'s facts (that the victim was physically assaulted) and word choice (stating that

---

ing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

[14] Importantly, the statute cited in *McClellan* is the predecessor to TENN. CODE ANN. § 39-11-106(a)(34), which defines "serious bodily injury" in the Tennessee aggravated-assault statute.

rape is *both* physically and mentally injurious). *McClellan* is thus no help to Russell. For similar reasons, the remaining cases he cites are of no benefit.[15]

Russell also relies on two recent Sixth Circuit decisions and one Ninth Circuit decision that held, under plain-error review, that offenses that plausibly criminalize conduct resulting in only mental harm are not COVs for sentencing.[16] But those cases do not help Russell either because they examined different statutes, or the defendants in those cases identified state-court decisions that supported their interpretation of the statute.[17]

In sum, Russell has not identified a single case to support his interpretation. He has not shown a "realistic probability" that Tennessee reads its aggravated-assault statute to criminalize conduct that causes solely mental harm; accordingly, there is no clear error.

\* \* \* \* \*

Because Russell has not shown that the district court clearly erred when it characterized his 2017 aggravated assault conviction as a COV, the judgment is AFFIRMED.

_____

[15] *See, e.g.*, *State v. Price*, 2001 WL 1464555, at \*2 (Tenn. Crim. App. Nov. 19, 2001) (reaffirming that "every rape is physically and mentally injurious to the victim"); *State v. Thompson*, 2004 WL 2964704, at \*19 (Tenn. Crim. App. Dec. 20, 2004) (same); *State v. Huddleston*, 1998 WL 67684, at \*3 (Tenn. Crim. App. Feb. 20, 1998) (same).

[16] *See Sanchez-Perez v. Garland*, 100 F.4th 693 (6th Cir. 2024*)* (holding that Tennessee's simple-assault statute is not categorically a COV); *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc) (holding that Ohio's aggravated-assault statute is not categorically a COV); *United States v. Castro*, 71 F.4th 735 (9th Cir. 2023) (holding that Montana's assault statute is not categorically a COV).

[17] *See Sanchez-Perez*, 100 F.4th at 702 n.8 (expressly limiting its holding to Tennessee's simple-assault statute); *Burris*, 912 F.3d at 398 (noting that the defendant "cite[d] two cases that confirm" his interpretation of the Ohio aggravated-assault statute); *Castro*, 71 F.4th at 742 (noting that the defendant "identifie[d] at least two cases in which Montana courts have found that psychological harm constitutes bodily injury").

# United States Court of Appeals

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

May 30, 2025

Mr. Philip Devlin
Western District of Texas, Midland
United States District Court
200 E. Wall Street
Room 222
Midland, TX 79701-0000

    No. 24-50075   USA v. Russell
                         USDC No. 7:22-CR-286-1

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                Sincerely,

                                LYLE W. CAYCE, Clerk

                                By: _____
                                Lisa E. Ferrara, Deputy Clerk
                                504-310-7675

cc:
    Ms. Mara Asya Blatt
    Ms. Stephanie Frederique Cagniart
    Mr. Shane O'Neal
    Mr. Zachary Carl Richter